*213 MEMORANDUM *
A class of Network Commerce, Inc. (“NCI”) shareholders (collectively, “Sherman”) appeals the district court’s dismissal of its complaint alleging that NCI violated Section 11 of the 1938 Securities Act. We affirm in part, and reverse and remand in part.
1. In her complaint, Sherman alleges that NCI failed to disclose a $52,912.50 loan to its CEO, DeWayne Walker (“Walker”) in registration statements accompanying NCI’s Initial Public Offering (“IPO”) and Secondary Public Offering (“SPO”). The district court held that a Form 4 filed by NCI in November of 1999 placed Sherman on inquiry notice, thereby starting the one-year statute of limitations and time-barring Sherman’s complaint.
We may affirm the judgment of the district court on any ground supported by the record. See Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295 (9th Cir.1998). We hold instead that the loan, in light of all of the information available at the time the registration statements were issued, was not material. To establish materiality, plaintiffs must demonstrate a “substantial likelihood that a reasonable investor would have acted differently if the misrepresentation had not been made or the truth had been disclosed.” Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir.2005). NCI anticipated that its IPO would generate proceeds of over $70 million and that its SPO would generate proceeds of over $130 million. The $52,912.50 loan to Walker therefore constituted .07% of the IPO’s anticipated proceeds and .04% of the SPO’s anticipated proceeds. Investors do not change their minds over these kinds of sums.
Sherman attempts to establish the loan’s materiality on the ground that the loan, though seemingly small, implicated broader problems in the way NCI ran its business. Sherman’s argument is unconvincing. Not only did the amount of the loan make it very unlikely that it would have any effect on a reasonable investor — let alone a “substantial” one — but under then-existing SEC regulations, NCI was not even obligated to disclose any CEO-related transaction worth less than $60,000. 17 C.F.R. § 229.404(a) (1999).
2. Moreover, Sherman’s unadorned allegation that NCI did not disclose a general plan to pay senior executives additional compensation fails to state a claim under Federal Rule of Civil Procedure 8(a). After four years and several amended complaints, Sherman is not able to provide any additional information regarding the details of NCI’s so-called “plan.” Her claim is nothing more than a “[tjhreadbare recital[ ] of the elements of a [Section 11 claim], supported by mere conclusory statements .... ” Ashcroft v. Iqbal, — U.S.-, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Because it is not “facial[ly] plausible],” the claim falls short. Id. In addition, even if Sherman’s allegations were more specific, they would still fail to state a claim because NCI’s reminder to investors that it retained broad discretion in the way it used its proceeds was sufficiently specific and cautionary to garner protection under the bespeaks caution doctrine and statutory safe harbor. 15 U.S.C. § 77z-2(c)(1)(A)(i) (2009) (liability will not attach if the registration statement contains “meaningful cautionary statements identifying important factors that could cause *214 actual results to differ materially from those in the forward-looking statement”).
3. The statutory safe harbor also protects assertions NCI made in its Ubarter.com registration statement regarding the benefits of the Ubarter merger. To be sure, NCI failed to mention that Ubarter.com required a new back-end management system and new user interface before it could generate meaningful cash flow. But the registration statement explicitly warned investors that NCI might “improperly evaluate] new services and technologies,” and might fail to “successfully integrate the acquired businesses, technologies and other assets.” Far from being a “[bjlanket warning” about the general risks of investing, Provenz v. Miller, 102 F.3d 1478, 1493 (9th Cir.1996) (quotation marks omitted), the Ubarter statement directly cautioned investors that there might be problems with coordinating and streamlining the relevant technology. Further, NCI’s Ubarter.com registration statement was not misleading in its cash forecasts and projections. As the district court concluded, the statement did not contain “any affirmative statement of fact ... much less a projection regarding cash flows.” In re Network Commerce Inc. Sec. Litig., No. C01-0675L, 2006 WL 1375048, at *1 (W.D.Wash. May 16, 2006).
4. With respect to claims already discussed, the district court acted within its discretion in denying leave to amend. Sherman also alleged, however, that the Ubarter registration statement failed to disclose two loans in excess of $1 million each that NCI issued to Walker approximately three weeks after the statement became effective. For reasons not clear from the record, the district court failed to address this claim. And unlike Sherman’s other claims, this claim appears to be both material and sufficient to state a claim under Rule 8(a). As a result, we remand to the district court to address it in the first instance. Each party shall bear its own costs on appeal.
AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.